## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CHRISTOPHER TAHCHAWWICKAH,**

      **Plaintiff,**

      v.                          **CASE NO.  23-3238-JWL**

**NATHAN BRENNON, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Seward County Jail in Liberal, Kansas ("SCJ") and he has been granted leave to proceed in forma pauperis. He initially filed this matter in October 2023 (Doc. 1) and it now comes before the Court on Plaintiff's second amended complaint, filed on January 30, 2024 (Doc. 26).The Court has conducted the statutorily required screening of the amended complaint. For the reasons explained below, all Defendants except Defendants Brennon and Triana will be dismissed from this matter, as will all Counts except Counts I, II, and the portion of Count IX that asserts a claim of civil battery. As to the remaining claims, the Court concludes that a responsive pleading is required. Thus, the Court will order service on the remaining two Defendants.

## I.      The Second Amended Complaint

In the second amended complaint, Plaintiff names as Defendants the City of Liberal, Kansas (the City); Liberal Police Officer Nathan Brennon; Liberal Police Officer Noemy Triana; Liberal law firm Brooks & Associates (the Firm); attorney Barbara Nash, who works for the Firm; Liberal city prosecutor Lynn Koehn; and Liberal Municipal Judge Jason Maxwell.[1] (Doc. 26, p. 1-

---

[1] Plaintiff has advised that he seeks to sue the City in its individual capacity only and the remaining Defendants in their individual and official capacities. (Doc. 24.)

3.) As the factual background for the complaint, Plaintiff asserts that on Friday, July 28, 2023 at approximately 5:15 p.m., he was walking down the sidewalk in Liberal, Kansas, when Defendant Brennon pulled up next to Plaintiff. *Id.* at 4. Defendant Brennon was responding to a report that a Black male was walking into oncoming traffic. Plaintiff is a member of the Cheyenne and Arapaho Tribes of Oklahoma. *Id.*

Defendant Brennan asked Plaintiff how he was doing and, after Plaintiff responded, Defendant Brennon asked for Plaintiff's name. *Id.* at 4. Plaintiff responded and asked if he was a suspect, and Defendant Brennon said, "No." *Id.* When Plaintiff asked if he looked like a suspect who had committed a crime, Defendant Brennon got out of his vehicle and said, "Now you're a suspect." Defendant Brennon demanded that Plaintiff show identification; Plaintiff gave his full name and handed Defendant Brennon his wallet, but then "grabbed his wallet back." *Id.* at 4-5. Defendant Brennon then demanded to see Plaintiff's identification again, so Plaintiff opened his wallet and removed his identification card. *Id.* at 5.

Defendant Brennon told Plaintiff that he wanted to run Plaintiff's name and then they would be on their way. *Id.* Plaintiff asked, "Am I in commission of a felony?" Defendant Brennon said, "No," and explained that Plaintiff was not in trouble. *Id.* at 5. Defendant Brennon also said, however, that he still wanted to run Plaintiff's name and he said that if Plaintiff refused, he would be arrested for interference. *Id.* As Defendant Triana arrived to assist Defendant Brennon, Defendant Brennon grabbed Plaintiff by the arm and violently threw him to the ground, punching him in the face. *Id.* At some point Defendant Brennon drew his taser. *Id.* at 20. Defendant Triana grabbed Plaintiff's arm and handcuffed him. *Id.* at 5-6. Plaintiff was then taken to jail and faced municipal charges of being a pedestrian under the influence, criminal littering, and interference

with a law enforcement officer. *Id.* at 6-7. He was not given a field sobriety test, a breathalyzer, a blood test, or a urine test. *Id.* at 7.

According to reports later filed regarding the events at the jail, Plaintiff's interactions with jail officers were intermittently combative. *Id.* at 11-12. At one point, when officers had left Plaintiff in the holding cell, a tower officer reported that Plaintiff was making a noose out of a blanket. *Id.* at 12-13. Officers went to the holding cell and Plaintiff wrapped the blanket around Sergeant Gallardo's upper torso, back, shoulder, or neck.[2] Another jail official cut the blanket with scissors, freeing Sergeant Gallardo, who struck Plaintiff with a closed fist; jail staff then took Plaintiff to the floor. *Id.* at 13-15.

On August 8, 2023, the municipal court appointed Defendant Nash to represent Plaintiff in the municipal case and a trial was set for September 14, 2023. *Id.* at 7. When Plaintiff was transported to court on the trial date, however, he learned that Defendants Nash and Koehn had agreed—outside of Plaintiff's presence—that the charges against Plaintiff would be dismissed. Defendant Maxwell had signed an order dismissing the municipal case without prejudice "as pending charges in district court from same offense date." *Id.* at 8-10.

Based on the events at the jail that are noted above, Plaintiff was charged in the District Court of Seward County, Kansas with one count of attempted second-degree murder, one count of battery against a law enforcement officer, five counts of criminal threat, and two counts of criminal damage to property. *Id.* at 10-11. In January 2024, Plaintiff was charged in a separate criminal case in the District Court of Seward County, Kansas with one count of criminal threat; Plaintiff asserts that he did not threaten the alleged victim and that charges were filed against Plaintiff because he is a practicing Muslim. *Id.* at 19.

---

[2] Plaintiff points out that narrative reports from different jail staff reflected the placement of the blanket or sheet differently. (Doc. 26, p. 13-15.)

As Count I, Plaintiff asserts that Defendants Brennon and Triana violated his Fourth Amendment rights when they wrongfully arrested and wrongfully or falsely imprisoned Plaintiff. *Id.* at 20. As Count II, Plaintiff asserts that Defendant Brennon violated the Eighth Amendment's prohibition against cruel and unusual punishment when he threw Plaintiff to the ground, punched Plaintiff in the face, and pulled his taser. *Id.* As Count III, Plaintiff alleges that the City violated his Due Process rights under the Fourteenth Amendment when it denied him the opportunity to confront the witnesses against him in a public trial. *Id.* at 21. As Count IV, Plaintiff asserts a claim of legal malpractice based on Defendants Nash, the Firm, and Koehn negotiating the dismissal of the municipal charges outside of Plaintiff's presence. *Id.* at 22. As Count V, Plaintiff alleges "sick and gross retaliation" based on Defendant Maxwell dismissing the municipal case without prejudice outside of Plaintiff's presence. *Id.* As Count VI, Plaintiff alleges that the dismissal of the municipal charges outside of Plaintiff's presence violated his rights under the Sixth Amendment to a speedy and public trial and to confront the witnesses against him. *Id.*

As Count VII, Plaintiff alleges that the City failed to train and supervise Defendants Brennon and Triana, which led to their "sick and gross negligent conduct." *Id.* at 23. As Count VIII, Plaintiff alleges that Defendants Brennon and Triana racially profiled him, noting that they were responding to a report of a Black male subject and Plaintiff is a member of the Cheyenne and Arapaho Tribes of Oklahoma. *Id.* As Count IX, Plaintiff alleges that Defendant Brennon committed assault and battery when he threw Plaintiff to the ground, punched Plaintiff in the face, and pulled his taser. *Id.* As relief, Plaintiff seeks $30,000,000.00 for emotional distress, post-traumatic stress disorder (PTSD), and pain and suffering, as well as the dismissal of all charges against him and the expungement of his entire criminal record. *Id.* at 24.

## II.    Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his amended complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)(quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct,

much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

## III.   Discussion

### A.   Defendants

#### i.   Defendant Koehn

This matter is subject to dismissal as it is brought against Defendant Koehn, the city prosecutor, because all of the allegations involving Defendant Koehn rest upon the decision to dismiss the municipal charges against Plaintiff. Prosecutors are absolutely immune from civil liability for damages for "acts undertaken by a prosecutor . . . which occur in the course of his [or her] role as an advocate for the State." *Stein v. Disciplinary Bd. of Supreme Court of N.M.*, 520 F.3d 1183, 1193 (10th Cir. 2008) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Even more specifically, "a prosecutor's decision as to when to dismiss charges is entitled to absolute prosecutorial immunity because it is 'intimately associated with the judicial phase of the criminal process.'" *Joseph v. Yocum*, 53 Fed. Appx. 1, 2 (10th Cir., Nov. 26, 2002) (unpublished) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976), and citing *Brodnicki v. City of Omaha,* 75 F.3d 1261, 1268 (8th Cir.1996) ("The decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions.")). Accordingly, Defendant Koehn is entitled to absolute immunity in this suit and this Court will dismiss Defendant Koehn from this matter.

#### ii.   Defendant Maxwell

Similarly, this matter is subject to dismissal as it is brought against Defendant Maxwell because the only allegations involving Defendant Maxwell are that he agreed to the dismissal without prejudice of the municipal charges against Plaintiff. Judges are absolutely immune from

civil suits based on actions taken in their judicial capacity, except where they act in the clear absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Plaintiff does not allege that Defendant Maxwell acted in the clear absence of all jurisdiction and Defendant Maxwell's entering an order dismissing charges is an action taken in his judicial capacity. Accordingly, Defendant Maxwell is entitled to absolute immunity from this suit and this Court will dismiss Defendant Maxwell from this matter.

### iii. Defendant Nash

Next, this matter is subject to dismissal as it alleges claims against Defendant Nash under 42 U.S.C. § 1983[3] because Defendant Nash was not acting "under color of state law" when she agreed to the prosecution's dismissal of the municipal charges against Plaintiff. *See West v. Atkins*, 487 U.S. at 48-49 ("To state a claim under § 1983, a plaintiff must . . . show that the alleged deprivation was committed by a person acting under color of state law."). Defendant Nash was court-appointed to represent Plaintiff in the municipal case and the United States Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 324 (1981).[4] Agreeing with a prosecutor's pretrial wish to dismiss charges against

---

[3] Count IV alleges a claim of legal malpractice against Defendant Nash and the Firm for agreeing with Defendant Koehn—outside the presence of Plaintiff—to dismiss the municipal charges against Plaintiff. A claim based on legal malpractice "is a state-law claim, not a § 1983 claim. *Wallin v. Arapahoe Cnty. Det. Facility*, 244 Fed. Appx. 214, 218-19 (10th Cir. 2007) (unpublished). The viability of the state-law-based legal malpractice claim in Count IV is discussed below. This portion of this order addresses only whether Plaintiff may sue Defendant Nash under 42 U.S.C. § 1983.

[4] Although Defendant Nash is employed by the Firm and is not a public defender, the Tenth Circuit has affirmed a dismissal based upon the premise that

> [public defenders and their agents, *whether court appointed or privately retained*, performing in the traditional role of attorney and investigator for the defendant in a criminal proceeding are not deemed to act under color of state law; such attorneys and investigators represent their client only, not the state, and cannot be sued in a 42 U.S.C. § 1983 action.

*Simmons v. Beinvenu*, 81 F.3d 173, p. *3 (10th Cir. March 1996) (unpublished) (emphasis added).

one's client is well within the scope of traditional functions of defense counsel in a criminal proceeding. There are no facts alleged in the second amended complaint that indicate Defendant Nash was acting under color of state law at any relevant time. Accordingly, Plaintiff has not stated a plausible claim for relief under § 1983 with respect to Defendant Nash and the federal claims against her must be dismissed without prejudice.

### iv.   Defendant Brooks & Associates Law Firm

Relatedly, the only factual allegation in the second amended complaint involving the Firm is that Defendant Nash was employed by the Firm. In order to state a plausible claim under § 1983, "the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Because Plaintiff has failed to make show that the Firm was involved in the constitutional violations as more than merely Defendant Nash's employer, Plaintiff has failed to state a plausible claim for relief against the Firm under § 1983.[5] The federal claims against the Firm must be dismissed without prejudice.

### v.   The City of Liberal, Kansas

This matter is subject to dismissal as it is brought against the City of Liberal, Kansas because the second amended complaint fails to allege facts that, if true, show that the City may be liable under 42 U.S.C. § 1983. This Court's November 15, 2023 memorandum and order to show cause regarding the original complaint explained:

> This action is subject to dismissal as brought against the City of Liberal, Kansas because Plaintiff has failed to allege facts that, if true, state a plausible claim against the city. A city may be liable under 42 U.S.C. § 1983 only when it has deprived a person of his constitutional rights or has caused a person to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). A city is not

---

[5] The viability of the state-law-based legal malpractice claim against the Firm in Count IV is discussed below. This portion of this order addresses only whether Plaintiff may sue the Firm under 42 U.S.C. § 1983.

liable merely for the actions of its employees under a theory of respondeat superior. *See id.* In other words, "[a] municipality is not directly liable for the constitutional torts of its employees." *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

To succeed on a claim against a city, Plaintiff "must first show a municipal policy or custom—either an official rule or one so entrenched in practice as to constitute an official policy." *Finch*, 38 F.4th at 1244. Second, Plaintiff must show that the City "was deliberately indifferent to constitutional violations that were the obvious consequence of its policy," by showing that the City "had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'" *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). Actual notice can be established by showing "a 'pattern of tortious conduct,'" and constructive notice can be established "'if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction.'" *Id.* (quoting *Barney*, 143 F.3d at 1308).

If Plaintiff establishes that the city was deliberately indifferent, the final step is showing "that the policy directly caused his constitutional injury . . . by showing that the municipal practice was closely related to the deprivation of rights." Id. These are "'rigorous standards of culpability and causation.'" *Id.* at 1246 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 398 (1997)). In addition, municipal liability may be premised on decisions made by employees with final policymaking authority that are relied upon by subordinates or a failure to train or supervise employees that results from a deliberate indifference to the injuries caused. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988); *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010).

Even liberally construing the pro se complaint and taking all the facts alleged therein as true, Plaintiff has not pled a plausible claim against the City of Liberal, Kansas. He has not shown that the events underlying this complaint were related to any city policy, nor has he shown that the city was deliberately indifferent to constitutional violations that were the obvious consequence of that policy, nor has he shown that the policy directly caused his injury, nor has he shown that the events were caused by city employees who have final policymaking authority, nor has he shown that the events were the result of a failure to train or supervise. Thus, any claim in this matter against City of Liberal, Kansas is subject to dismissal.

(Doc. 7, p. 5-6.)

The second amended complaint suffers the same deficiencies. Plaintiff broadly alleges that the City gave him ineffective counsel, "failed to give [him] the opportunity to argue [and] litigate the alleged charges against him," failed to have a policy or custom to train and supervise its

employees' wrongful conduct and constitutional violations, and denied Plaintiff the chance to confront witnesses against him in a public trial on the municipal charges. (Doc. 26, p. 10, 18, 21-23.)

As pointed out in the November 15, 2023 memorandum and order to show cause, "[a] pro se litigant's 'conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.'" (Doc. 7, p. 4 (citation omitted).) The brief and conclusory references in the second amended complaint about the policies and customs of the City are insufficient to show that the City is subject to liability in this matter. As in the original complaint, the second amended complaint does not specifically identify a policy or custom related to the events underlying this matter, nor does it allege specific facts to show a plausible claim that the City was deliberately indifferent to constitutional violations that were the obvious consequence of that custom or policy, that the events were caused by city employees with final policymaking authority, or that the events resulted from a failure to train or supervise.

Because the Court has already advised Plaintiff of the requirements for suing the City under 42 U.S.C. § 1983 yet this deficiency remains in his second amended complaint, the Court declines to allow Plaintiff the opportunity to further amend his complaint on this point. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'failure to cure deficiencies by amendments previously allowed'"). Thus, the Court will dismiss the City of Liberal from this action without prejudice for failure to state a plausible claim for relief against the City.

**B.  The Federal Claims (Counts I, II, III, V, VI, VII, and VIII)**

This Court expresses no opinion on the merits of Counts I and II or the likelihood of Plaintiff's ultimate success on the arguments therein. The Court concludes only that Counts I and

10

II state a plausible claim for relief and thus pass the initial screening required by 28 U.S.C. § 1915A(a) and (b) and 28 U.S.C. § 1915(e)(2)(B). Although Count II alleges a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, the claim in Count II is based on Plaintiff's allegations regarding the violent conduct of Defendant Brennon. (*See* Doc. 26, p. 20.) "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is more properly characterized as one invoking the protections of the Fourth Amendment.'" *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Thus, the Court has liberally construed Count II, as is appropriate since Plaintiff proceeds pro se, to assert a plausible claim for relief under the Fourth Amendment.

Counts III, V, VI, and VII allege federal constitutional violations only by Defendants who, for the reasons explained above, are not subject to liability in this action. (Doc. 25, p. 21-23.) Put another way, in the context of suits brought under 42 U.S.C. § 1983, Counts III, V, VI, and VII fail to state a plausible claim for relief from a proper defendant.[6]

Count VIII is titled "Racial Profile" and, as supporting facts, Plaintiff states: "Defendant(s) Nathan Brennon and Noemy Triana was responding to a Black male suspect. Plaintiff, Plaintiff is a member of the Cheyenne & Arapaho Tribes of Oklahoma." (Doc. 26, p. 23 (capitalization normalized and brackets removed, all other errors in original).) As the Court explained in its January 4, 2024 memorandum and order to show case related to the amended complaint, "a plaintiff must identify the constitutional right that was violated." (Doc. 19, p. 4.) Plaintiff has not done so with respect to Count VIII.

---

[6] The Court notes that Plaintiff has pointed to no legal authority that supports the implied premise for the arguments in Counts III, V, and VI : that Plaintiff had a right to demand trial, with all of the related constitutional guarantees, once the city prosecutor decided, pre-trial, to dismiss the charges against him. The Court is unaware of any such authority.

The Tenth Circuit has explained, however, that "claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause." *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003). It has also considered a claim involving "an alleged racially discriminatory stop and arrest by a single officer" to implicate the Equal Protection Clause. *See id.* at 1167-68. Thus, this Court will liberally construe Count VIII as an equal protection claim. To state a plausible claim of an unconstitutional racially discriminatory stop and arrest, "[P]laintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. . . . The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision." *Id.* at 1168. Although one way to show discriminatory motivation is through statistical data and comparisons, in other cases, a plaintiff may "seek[] to prove the racially selective nature of his stop and arrest . . .  by direct evidence of [the officer's] behavior during the events in question," the "officer's pattern of traffic stops and arrests, his questions and statements to the person involved, and other relevant circumstances [that] may support an inference of discriminatory purpose." *Id.*

Even taking all of the facts asserted in the second amended complaint as true and liberally construing them, Plaintiff has not alleged facts sufficient to support a plausible claim that either Defendant Brennon or Defendant Triana were motivated by a discriminatory purpose during their interactions with Plaintiff. Plaintiff has not asserted any relevant statistical information nor has he otherwise shown a discriminatory motivation. He alleges that Defendants Brennon and Triana were responding to a report of "a 'Black Male' suspect possibly drinking alcohol and walking into oncoming traffic" and Plaintiff, whom Brennon stopped, is a member of the Cheyenne and Arapaho Tribes of Oklahoma. (Doc. 26, p. 4, 23.) These facts, when taken as true, demonstrate at

best that Plaintiff did not match the description of the individual reported for walking into oncoming traffic and possibly drinking alcohol, but they are not sufficient to support a plausible claim that the decision to stop or engage with Plaintiff was motivated by a discriminatory purpose. Accordingly, Count VIII is subject to dismissal without prejudice for failure to state a plausible claim on which relief can be granted.

### C. The State-Law Claims (Counts IV, IX)

As Count IV, Plaintiff asserts a claim of legal malpractice against Defendants Nash and the Firm for consenting to the dismissal of the municipal charges against Plaintiff outside of his presence. (Doc. 26, p. 22.) This is a state-law claim. *See Wallin v. Arapahoe Cnty. Det. Facility*, 244 Fed. Appx. 214, 218–19 (10th Cir. 2007) (unpublished) ("[A] legal malpractice claim is a state-law tort claim, not a § 1983 claim."). ). "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted). Similarly, in Count IX, Plaintiff asserts a claim of "assault and battery" against Defendant Brennon. (Doc. 26, p. 23.) Because Count II brings a federal claim against Defendant Brennon for the force he used against Plaintiff, the Court liberally construes Count IX to assert the state-law tort of assault and civil battery.[7] *See Estate of Randolph v. City of Wichita*, 57 Kan. App. 2d 686, 702 (Kan. Ct. App. Jan. 21, 2020), *rev. denied* Aug. 31, 2020 (defining civil assault and civil battery under Kansas law).

Under 28 U.S.C. § 1367(a), however, in a case such as this where the Court has original jurisdiction over claims under 42 U.S.C. § 1983, this Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

---

[7] If Plaintiff intended in Count IX to seek the criminal prosecution of Defendant Brennon, such relief is not available in this civil rights action. This Court cannot order the criminal prosecution of an individual; "such an order would improperly intrude upon the separation of powers." *See Presley v. Presley*, 102 Fed. Appx. 636, 636 (10th Cir. 2004) (unpublished).

form part of the same case or controversy under Article III of the United States Constitution." Thus, the question is whether Plaintiff's legal malpractice claim or his claim for civil assault and battery is "part of the same case or controversy" as his federal claims in Counts I and II. The United States Supreme Court has explained that in this context, in order to be "part of the same case or controversy," the state law claims must "'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."'" *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164-65 (1997) (citations omitted).

The Court concludes that Plaintiff's legal malpractice claim in Count IV is not part of the same case or controversy as his federal claims in Counts I and II. The federal claims assert that Defendants Brennon and Triana violated Plaintiff's Fourth Amendment rights by their actions before and during Plaintiff's arrest on July 28, 2023. The legal malpractice claim is based on Nash's actions during her representation of Plaintiff on the resulting municipal charges and the Firm's status as her employer. Although the claims are related, they do not derive from a common nucleus of operative fact. As such, this Court lacks jurisdiction over the state-law legal malpractice claim and must dismiss it.

The civil assault and battery claim in Count IX, on the other hand, stems from Defendant Brennon's actions leading to and during Plaintiff's arrest. Counts I, II, and IX derive from a common nucleus of operative fact, so this Court has supplemental jurisdiction over Count IX under 28 U.S.C. § 1367. Notwithstanding its jurisdiction over the claims in Count IX, however, the Court finds that Plaintiff has failed to state a plausible claim that Defendant Brennon committed the intentional tort of assault.

Under Kansas law, "a civil assault entails the threat of bodily harm coupled with the apparent ability to carry out the threat resulting in the victim's immediate apprehension of harm. The actional injury is the victim's apprehension and, thus, his or her mental disturbance resulting from the threat." *Estate of Randolph*, 57 Kan. App. 2d at 702. Even taking all of the facts alleged in the second amended complaint as true and liberally construing them, Plaintiff does not allege that Defendant Brennon threatened him with bodily harm or that Plaintiff was immediately apprehensive of such harm. Thus, the portion of Count IX that asserts a state-law tort claim against Defendant Brennon for assault is subject to dismissal for failure to state a plausible claim for relief.

### D.  Relief Requested

As relief, Plaintiff seeks money damages in the amount of $30,000,000.00; the expungement of his entire criminal record; and the dismissal of all charges against him. Plaintiff's request that his criminal record be expunged is not the sort of injunctive relief available in this action. Expungement of Kansas arrest records is governed by K.S.A. 22-2410, which places expungement decisions within the purview of the state district courts. Federal injunctive orders generally bind only types of individuals and the Kansas state court system does not fall within those parameters. See Fed. R. Civ. P. 65(d)(2).

In addition, the dismissal of state criminal charges is not available as relief in this § 1983 action. A petition for habeas corpus relief is a state prisoner's sole remedy in federal court for a claim of entitlement to immediate or speedier relief. *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973); *Boutwell v. Keating*, 399 F.3d 1203, 1209 (10th Cir. 2005). That leaves Plaintiff's prayer for money damages. As previously explained to Plaintiff, "[s]ection 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for

injunctive relief." (Doc. 19, p. 9 (quoting *Brown v. Montoya*, 662 F.3 1152, 1161 n.5 (10th Cir. 2011).)

## IV.    Summary

To summarize, Defendants Koehn and Maxwell are entitled to absolute immunity—and therefore dismissal[8]—from civil liability in this matter because their actions, as alleged in the second amended complaint, were taken in their respective roles as city prosecutor and municipal court judge. Defendant Nash, Plaintiff's court-appointed defense counsel, was not acting under color of state law when she engaged in the acts alleged in the second amended complaint, so she may not be sued under 42 U.S.C. § 1983. Relatedly, § 1983 claims may not be based on vicarious liability, so the § 1983 claims against Defendant Brooks & Associates Law Firm must be dismissed because they are based solely on the Firm's status as Defendant Nash's employer. The City of Liberal, Kansas must be dismissed as a Defendant in this matter because despite the Court's prior explanation to Plaintiff, the second amended complaint again fails to allege facts that, if true, demonstrate that the City can be held liable for the events alleged therein.

Turning to the viability of the claims, Counts I and II, which are brought against Defendants Brennon and Triana, are sufficiently pled to pass this initial screening process. Count III is pled only against the City and it must be dismissed because—as noted above—Plaintiff has failed to allege the type of facts that support a plausible claim for municipal liability. Count IV is a state law claim against Defendant Nash and the Firm for legal malpractice. Because this claim is *not* so related to the federal claims in this action that they are part of the same case or controversy, this

---

[8] "A dismissal with prejudice is appropriate when the defendants are immune from suit and further amendment of the plaintiff's complaint would be futile." *Gabriel v. El Paso Combined Courts*, 842 Fed. Appx. 231, 235 (10th Cir. Jan. 8, 2021) (unpublished) (citing *McKinney v. Okla., Dept. of Human Servs.*, 925 F.2d 363, 365-66 (10th Cir. 1991)).

Court lacks jurisdiction over Count IV and must dismiss it without prejudice.[9] Count V must be dismissed because it is pled only against Defendant Maxwell, who is immune from suit.

Liberally construing Count VI, it must be dismissed because it is pled against the City but fails to support a plausible claim for municipal liability; against Defendant Koehn, who has prosecutorial immunity; and against Defendant Maxwell, who has judicial immunity. Count VII broadly alleges that the City failed to train and supervise its officers and Count VIII alleges unconstitutional racial profiling, but both are based only on conclusory statements without specific supporting facts, which are insufficient to state a plausible claim for relief. Thus, Counts VII and VIII must be dismissed. Count IX asserts state-law-based intentional torts of assault and battery; Plaintiff has not pled sufficient facts to support a plausible claim of assault, but the battery claim survives initial screening.

In short, after the initial screening, Defendants Brennon and Triana are the only remaining Defendants. Count I alleges that Defendants Brennon and Triana violated Plaintiff's Fourth Amendment rights when they wrongfully arrested and imprisoned Plaintiff. Count II alleges that Defendant Brennon violated Plaintiff's Fourth Amendment rights by using excessive force during the arrest. Count IX alleges that Defendant Brennon committed the civil tort of battery under Kansas state law. All other Defendants and Counts will be dismissed. The dismissal of pending state criminal charges and an order that the state courts expunge Plaintiff's criminal history are relief not available in this action, so the only remaining request for relief is Plaintiff's claim for $30,000,000.00.

The Court concludes that with respect to Counts I, II, and the battery portion of Count IX, a responsive pleading is necessary. Because Plaintiff is proceeding in forma pauperis, the Clerk of

---

[9] "A district court's dismissal for lack of subject matter jurisdiction should be without prejudice." *Strozier v. Potter*, 71 Fed. Appx. 802, 804 (10th Cir. Aug. 4, 2003) (unpublished) (citations omitted).

Court must undertake service of process under 28 U.S.C. § 1915(d).

**IT IS THEREFORE ORDERED BY THE COURT** that all claims against Defendants Jason Maxwell and Lynn Koehn are dismissed with prejudice because they are entitled to absolute immunity. All claims in this matter brought under 42 U.S.C. § 1983 against Defendants Barbara Nash, Brooks & Associates Law Firm, and the City of Liberal Kansas are dismissed without prejudice because the claims fail to state a claim on which relief can be granted. This leaves Defendant Brennon and Triana as the sole defendants in this matter and, as Plaintiff seeks only money damages, the § 1983 claims against them may be brought against them in their individual capacity only.

**IT IS FURTHER ORDERED** that Count IV is dismissed without prejudice for lack of jurisdiction. Counts III, IV, V, VI, VII, VIII, and the portion of Count IX based on a claim of the intentional tort of assault are dismissed without prejudice for failure to state a claim on which relief can be granted.

**IT IS FURTHER ORDERED** that the remaining claims in this action, Counts I, II, and the battery claim in Count IX, require a responsive pleading from the remaining Defendants, Nathan Brennon and Noemy Triana. The Court therefore directs the Clerk of the Court to prepare and issue a waiver of service form for each Defendant pursuant to Fed. R. Civ. P. 4(d) to be served upon each Defendant at no cost to Plaintiff.

**IT IS SO ORDERED**.

**Dated February 12, 2024, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**