IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER TAHCHAWWICKAH,

    *Plaintiff,*

v.

                                            Case No. 23-3238-EFM

NATHAN BRENNON, et al.,

    *Defendants.*

**MEMORANDUM AND ORDER**

Before the Court are Cross-Motions for Summary Judgment. Pro se Plaintiff Christopher Tahchawwickah filed a Motion for Summary Judgment (Doc. 44) on his three claims against Defendants Nathan Brennon and Noemy Triana.[1] He alleges that, during his arrest, Defendants (1) violated his Fourth Amendment right against unreasonable searches and seizures, (2) violated his Eighth Amendment right against cruel and unusual punishment, and (3) committed a civil battery upon him. Defendants filed a Cross-Motion for Summary Judgment (Doc. 50) on all of Plaintiff's claims. For the reasons stated herein, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendants' Cross-Motion for Summary Judgment.

                            **I.     Factual and Procedural Background**

**A.    Local Rules for Summary Judgment**

The District of Kansas Local Rules set forth specific requirements for summary judgment motions. A brief in support of a motion for summary judgment must contain "a concise statement

---

[1] Plaintiff brought several other counts against several other Defendants, but the Court previously dismissed those other counts and Defendants.

of material facts as to which the movant contends no genuine issue exists."[2] Similarly, a brief opposing a motion for summary judgment must begin with a "concise statement of material facts as to which the party contends a genuine issue exists."[3] The Local Rules also require represented parties moving for summary judgment against a pro se party to serve a notice on the pro se party informing them of these requirements and the potential consequences of not adhering to the rules.[4] These consequences include accepting the defendant's facts as true.[5]

Plaintiff is pro se, and the Court must afford him some leniency in his filings.[6] A pro se litigant, however, is still expected to "follow the same rules of procedure that govern other litigants."[7]

Here, Plaintiff failed to include a concise statement of facts in his Motion for Summary Judgment. In support of his motion, Plaintiff attached two narrative statements which appear to be written by Defendants; however, these written statements are not in the form of an affidavit as required by the rules, so the Court will not consider them.[8] Plaintiff also failed to substantively respond to, or controvert, the statement of facts in Defendants' Cross-Motion for Summary Judgment—even after Defendants provided the notice required by the Local Rules.[9] Therefore, the

---

[2] D. Kan. R. 56.1(a).

[3] D. Kan. R. 56.1(b)(1).

[4] *See* D. Kan. R. 56.1(d).

[5] *Id.*

[6] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[7] *Id.*

[8] *See id.* The Court notes that the written narratives do not substantially differ from the evidence provided by Defendants to support their cross-motion for summary judgment.

[9] The Court struck Plaintiff's Reply to Response to Plaintiff's Motion for Summary Judgment as untimely. However, even if the Court had not struck this reply, Plaintiff still would have failed to comply with the rules because his reply did not contain a statement of facts and did not controvert Defendants' statement of facts.

Court will consider Defendants' statement of facts as uncontroverted for purposes of summary judgment.

**B.    Plaintiff's Arrest**

On July 28, 2023, Defendant Brennon was on duty as a police officer with the City of Liberal Police Department. Defendant Triana was shadowing Brennon as part of her pre-academy training with the City of Liberal Police Department. Defendants responded to a call reporting an intoxicated male drinking in the street and kicking trees in Liberal, Kansas.

Defendants made contact with Plaintiff, who was carrying an alcoholic beverage while walking in the street. Plaintiff was visibly intoxicated. Brennon asked Plaintiff to pour out the drink. Plaintiff complied and threw the empty can into nearby grass. Brennon asked Plaintiff for his name, identification, and what brought Plaintiff to Liberal. Plaintiff responded that he had gotten into "a little trouble" and removed his hat from his head. Plaintiff initially provided Brennon with his driver's license but took back the license from Brennon's hands before Brennon could provide Plaintiff's information to dispatch.

Brennon requested to see Plaintiff's identification again, but Plaintiff refused Brennon's repeated requests, asking Brennon if he had committed a crime. Brennon warned Plaintiff that if he continued to refuse to provide his driver's license he would be arrested. During this interaction, Plaintiff took small steps backwards and looked over his shoulder. He also became more defiant and noncompliant. Plaintiff stated that he would "defend himself" if Brennon tried to arrest him.

Brennon then placed Plaintiff under arrest for public drinking, littering, and interference with law enforcement. Brennon requested that Plaintiff place his hands behind his back. Plaintiff tensed up and refused to allow Brennon to place him in hand restraints. Brennon told Plaintiff not to tense up and asked him if there was anything he could do to gain Plaintiff's cooperation. Plaintiff

continued to refuse to comply with Brennon's commands, asking if he was a suspect or looked like he had committed a crime.

Brennon attempted to gain control and effectuate Plaintiff's arrest by taking him to the ground with a leg sweep. Plaintiff spread his legs, stiffened his body even more, and pulled away from Brennon. By doing so, he avoided being taken to the ground by the leg sweep. Brennon and Plaintiff engaged in a struggle that took them both to the ground. Plaintiff put his arm around Brennon's neck, placing him in a chokehold. The two struggled with each other on the ground.

Triana intervened by pushing Plaintiff's shoulder in an effort to get Plaintiff off of Brennon. Once freed, Brennon pulled out his taser and pointed it at Plaintiff. At this show of force, Plaintiff ceased resisting and allowed himself to be arrested. Plaintiff was cited for pedestrian under the influence, criminal littering, and interference with law enforcement.

**C.     Procedural Posture**

Plaintiff filed suit on October 30, 2023, asserting two claims under 42 U.S.C. § 1983 and one claim under state law. Plaintiff's first § 1983 claim alleges that Defendants violated his Fourth Amendment right against unreasonable searches and seizures when Defendants wrongfully arrested and falsely imprisoned him. His second § 1983 claim and his state law claim arise from the same facts. Plaintiff alleges that Brennon threw him to the ground, punched him in the face, and pulled out his taser. By doing so, Plaintiff argues that Brennon violated his Eighth Amendment right against cruel and unusual punishment and committed a civil battery upon him.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[10] A fact is

---

[10] Fed. R. Civ. P. 56(a).

-4-

"material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[11] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[12] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[13] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[14] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[15] The legal standard for cross-motions for summary judgment is the same.[16] Each motion is considered separately, and "[e]ach party retains the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law."[17]

Because Plaintiff proceeds pro se, the Court considers his pleadings "liberally and hold[s] them to a less stringent standard than those drafted by attorneys."[18] But the pro se status does not relieve a litigant from his obligation to comply with the procedural rules, and the Court cannot "assume the role of advocate for the pro se litigant."[19]

---

[11] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[12] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[13] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[14] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[15] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[16] *City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

[17] *Szczygiel v. Kansas*, 2016 WL 838935, at *4 (D. Kan. Mar. 3, 2016) (citations omitted).

[18] *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).

[19] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

### III. Analysis

### A. Plaintiff's Motion for Summary Judgment

Although Plaintiff proceeds pro se and the Court views his pleadings with leniency, Plaintiff's motion for summary judgment so deficiently complies with the rules that the Court must deny it. Plaintiff's motion generally consists of a recitation of the claims in his complaint, a non-defendant officer's narrative related to Plaintiff's booking (which appears irrelevant to his present claims), a statement from a purported forensic psychological evaluation of Plaintiff, and a request that the Court grant his motion.

Although Plaintiff cites *Schwartz v. Booker*[20] for the proposition that qualified immunity is not available to government officials who violate a person's clearly established constitutional rights, he does not attempt to connect this proposition to any facts. Further, because Plaintiff's motion does not include a statement of facts, it is nearly impossible to ascertain how Plaintiff hopes this Court will apply this proposition to his claims.

Similarly, Plaintiff cites *Saucier v. Katz*[21] for the proposition that his violated rights were clearly established. However, absent any factual basis or an application of those facts to the proposition cited, the Court cannot find that this proposition applies to the claims Plaintiff asserts. Because Plaintiff's motion does not provide a statement of uncontroverted facts, cite appropriate law, or apply facts to the law demonstrating that he is entitled to judgment as a matter of law, the Court must deny his motion.

---

[20] 702 F.3d 573, 579 (10th Cir. 2012).

[21] 533 U.S. 194 (2001).

B.  **Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on Plaintiff's § 1983 claims, asserting that they are entitled to qualified immunity. Once asserted, Defendants are entitled to qualified immunity "unless the plaintiff can show '(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct.'"[22]

1.  *Plaintiff's False Arrest Claim*

Plaintiff describes his Fourth Amendment § 1983 claim as wrongful arrest and false imprisonment. Because Defendants assert qualified immunity, to survive this cross-motion for summary judgment, Plaintiff must "demonstrate the elements of a common law claim and show that [his] Fourth Amendment right to be free from unreasonable search and seizure has been violated."[23] A claim "for false arrest or false imprisonment cannot stand if there was probable cause to arrest."[24] "Probable cause exists where the facts and circumstances within the arresting officer's knowledge . . . are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested."[25]

Here, the uncontroverted facts demonstrate that Defendants personally observed Plaintiff commit three separate offenses: pedestrian under the influence, criminal littering, and interference with a law enforcement officer. Both Defendants' affidavits support that they personally observed Plaintiff commit these offenses, and the bodycam video corroborates their accounts. Thus, the Court finds that probable cause existed to arrest Plaintiff because Defendants had knowledge that

---

[22] *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021) (citing *Henderson v. Glanz*, 813 F.3d 938, 952 (10th Cir. 2015)).

[23] *Trimble v. Park Cnty. Bd. of Comm'rs*, 2000 WL 1773239, at *3 (10th Cir. Dec. 4, 2000).

[24] *Lowery v. Flynn*, 2022 WL 17844467, at *4 (D. Kan. Dec. 22, 2022) (citing *Trimble*, 2000 WL 1773239 at *3).

[25] *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (citation omitted).

Plaintiff committed these offenses. Further, each of these offenses constitutes an arrestable offense.[26] Because probable cause existed to arrest Plaintiff, he cannot show that his arrest violated his constitutional right against unreasonable searches and seizures. Accordingly, his claim for false arrest and false imprisonment cannot stand.

Because Plaintiff has not shown that Defendants violated his constitutional rights when they arrested him, the Court need not address the clearly-established prong of the qualified immunity analysis. Therefore, the Court finds Defendants are entitled to qualified immunity here, and grants Defendants' cross-motion for summary judgment on Plaintiff's § 1983 Fourth Amendment claim.

### 2. *Plaintiff's Excessive Force Claim*

Plaintiff alleges in his second § 1983 claim that he was subject to cruel and unusual punishment when Brennon violently threw him to the ground, punched him in the face, and pulled out his taser. At the outset, because this excessive force claim as alleged by Plaintiff only involves Brennon—and not Triana—the Court grants summary judgment in favor of Triana to the extent this claim may relate to her.

Because Plaintiff was in a pre-conviction status at the time of his arrest, the Eighth Amendment's excessive force jurisprudence is inapplicable.[27] Nevertheless, liberally construing

---

[26] *See State v. King*, 293 Kan. 1057, 274 P.3d 599, 603 (2012) ("K.S.A. 22-2401(d) allows a law enforcement officer to arrest a person when a crime 'has been or is being committed by the person in the officer's view.'").

[27] *See In re Est. of Booker*, 745 F.3d 405, 419 (10th Cir. 2014) ("Determining which amendment applies to an allegation of excessive force requires consideration of 'where the plaintiff finds himself in the criminal justice system.' . . . . [C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment." (citations omitted)).

Plaintiff's pro se filings the Court will proceed to analyze his claim under the Fourth Amendment's excessive force jurisprudence.[28]

Officers violate an arrestee's clearly established Fourth Amendment right to be free from excessive force if the officers' arresting actions were objectively unreasonable in light of the facts and circumstances confronting them.[29] The Court assesses the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[30] This reasonableness standard—which is "clearly established" for the purposes of § 1983 actions[31]—implores the Court to consider the *Graham* factors: (1) the severity of the alleged crime, (2) the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and (3) the suspect's efforts to resist or evade arrest.[32] Brennon concedes that the first *Graham* factor weighs in Plaintiff's favor. Thus, the Court will analyze only the second and third factor.

    a.    *Graham* Factor 2

To analyze the second and most important *Graham* factor—"whether [Plaintiff] posed an immediate threat to the officers or the safety of others"—the Court applies four non-exhaustive *Larsen* factors.[33] These factors include: "(1) whether the suspect was given orders and the suspect's

---

[28] *See id.* ("Any force used 'leading up to and including an arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures." (citation omitted)).

[29] *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313–14 (10th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

[30] *Graham*, 490 U.S. at 396.

[31] *Cook v. Olathe Med. Ctr., Inc.*, 773 F. Supp. 2d 990, 1000 (D. Kan. 2011) (citing *Graham*, 490 U.S. at 396–97; *Olsen*, 312 F.3d at 1314).

[32] *Rosales v. Bradshaw*, 72 F.4th 1145, 1151 (10th Cir. 2023) (citing *Graham*, 490 U.S. at 396).

[33] *Est. of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008); *see also Est. of George v. City of Rifle*, 85 F.4th 1300, 1316 (10th Cir. 2023).

compliance with the orders; (2) whether any hostile motions were made toward the officers; (3) the physical distance between the officers and the suspect; and (4) the manifest intentions of the suspect."[34]

First, the Court will analyze whether Plaintiff was given orders and if he complied. Brennon repeatedly instructed Plaintiff to provide his identification; Plaintiff repeatedly refused to comply. Plaintiff was instructed to place his hands behind his back; Plaintiff refused to do so. As Brennon attempted to bring Plaintiff's hands behind Plaintiff's back, Brennon instructed Plaintiff not to "tense up;" Plaintiff remained tense. Because Plaintiff was given several orders and did not comply, the first of the *Larsen* factors weighs in Brennon's favor.

As to the second factor, the Court must determine whether Plaintiff made hostile motions toward the officers. Before the arrest, Plaintiff took several small steps backwards, repeatedly looked over his shoulder, and removed his hat. Upon review of the bodycam footage, Plaintiff's actions before the arrest made it appear that he was anticipating a hostile encounter with Defendants. Further, Plaintiff tensed his muscles after Brennon instructed him to place his hands behind his back. These actions were reasonably interpreted as hostile motions toward Defendants. Accordingly, this factor weighs in Brennon's favor.

Third, the Court must consider the physical distance between Plaintiff and Brennon. Before the arrest, the bodycam footage shows that Plaintiff and Brennon were no more than a yard or two apart. As Brennon began to make the arrest, he was close enough to place his hands on Plaintiff. The uncontroverted facts demonstrate that there was little distance between Plaintiff and Brennon. Accordingly, this factor weighs in Brennon's favor.

---

[34] *Id.* (citing *Palacios v. Fortuna*, 61 F.4th 1248, 1258 (10th Cir. 2023)).

Finally, the Court must weigh the manifest intentions of Plaintiff. Plaintiff expressly stated that he would "defend himself" if Defendants tried to place him under arrest. Thus, Plaintiff's manifest intentions informed Defendants that their safety would be threatened at the point of arrest. Accordingly, this factor weighs in Brennon's favor.

Because all four *Larsen* factors weigh in Brennon's favor, the Court finds that Plaintiff posed an immediate threat to Brennon's safety. Thus, the second *Graham* factor weighs in Brennon's favor.

      b.    *Graham* Factor 3

The third *Graham* factor assesses Plaintiff's level of resistance or attempts to evade arrest. Here, the Court considers whether Plaintiff "attempted to flee or actively resisted the arrest or search."[35] Specifically, this inquiry focuses on Plaintiff's level of resistance at the "precise moment the officer employed the challenged use of force."[36] Plaintiff names three discreet uses of force Brennon employed: Plaintiff's takedown, Brennon punching Plaintiff in the face, and Brennon pulling out his taser. The Court will address the third *Graham* factor's application to each discreet act.

Plaintiff's takedown was marked by resistance. Plaintiff's refusal to comply with Brennon's orders for identification and Plaintiff's stated intention to "defend himself" precipitated his arrest. When Brennon instructed Plaintiff to put his hands behind his back to effectuate the arrest, Plaintiff resisted. Plaintiff tensed his muscles, disallowing Brennon from bringing Plaintiff's arms behind his back. When Brennon felt this physical resistance, Brennon decided to take Plaintiff to the ground. Brennon attempted to use a leg sweep, which Plaintiff avoided.

---

[35] *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1273 (10th Cir. 2022) (citation omitted).

[36] *Anderson v. DelCore*, 79 F.4th 1153, 1165 (10th Cir. 2023) (citation omitted).

Plaintiff continued to resist and the two eventually went to the ground. Because Plaintiff actively resisted arrest and struggled against Brennon at the moment of takedown, as it relates to the takedown, the third *Graham* factor weighs in Brennon's favor.

Plaintiff alleges that Brennon punched him in the face. Outside Plaintiff's statement contained in his complaint and motion, there is no evidence that Brennon punched him in the face. The bodycam footage does not show Brennon punching Plaintiff before the two fell to the ground. Therefore, the alleged punch could have only occurred during the struggle after the two went to the ground. And once the struggle occurred, the bodycam footage is obscured and unhelpful. It is uncontroverted that in these few seconds of struggle, Plaintiff placed his arm around Brennon's neck. But granting all reasonable inferences to Plaintiff, even if Brennon had punched Plaintiff during this struggle, this punch was employed at the height of Plaintiff's active physical resistance against Brennon. Thus, as it relates to the alleged punch, the third *Graham* factor weighs in Brennon's favor.

Finally, Plaintiff alleges that Brennon pulled out his taser and pointed it at him. The uncontroverted facts establish that Brennon did pull out his taser and point it at Plaintiff. But Brennon did not use his taser, and it was only after he pulled his taser out that Plaintiff stopped resisting. Because Brennon did not use his taser after Plaintiff stopped resisting, the Court finds that, as it relates to Brennon pulling out his taser, the third *Graham* factor weighs in Brennon's favor.

In sum, considering the facts and circumstances surrounding the takedown, alleged punch, and taser, the third *Graham* factor weighs in Brennon's favor.

    c.    *Graham* Summary

Although the crimes Brennon witnessed Plaintiff commit were not very serious, Brennon had a lawful basis to arrest Plaintiff. Plaintiff repeatedly refused to comply with Brennon's orders

and stated he would "defend himself" if placed under arrest. Consistent with that expressed intention, he resisted arrest and engaged in a struggle with Brennon. Only after Brennon pulled his taser did Plaintiff stop resisting. Viewed under the totality of the circumstances, because two of the three *Graham* factors weigh in Brennon's favor, the Court finds that Brennon's actions were objectively reasonable. Because Brennon's actions were objectively reasonable, there was no constitutional violation, and the Court need not address the second prong of the qualified immunity analysis.[37]

### 3. *Plaintiff's Civil Battery Claim*

Plaintiff's last claim is a state law civil battery claim. Defendants assert that this Court lacks subject matter jurisdiction over this claim because Plaintiff did not give notice of his claim to the city of Liberal in accordance with K.S.A. § 12-105b. This statute requires that "any person having a claim against . . . an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice [with that municipality] before commencing such action."[38] Compliance with this statute is a jurisdictional requirement under Kansas law.[39]

Here, Defendants contend that Plaintiff has not complied with this statute. Plaintiff offers no evidence or argument to the contrary. Accordingly, Plaintiff's state law claim for civil battery must be dismissed for lack of jurisdiction.[40]

---

[37] *See id.* at 1169 ("Because no constitutional violation occurred, we need not reach the second prong of the qualified immunity inquiry.").

[38] K.S.A. § 12-105(b)(d).

[39] *Shrum v. Cooke*, 2021 WL 3051891, at *6 (D. Kan. Jul 20, 2021).

[40] *See id.*

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 44) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Cross-Motion for Summary Judgment (Doc. 50) is **GRANTED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 27th day of November, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE